**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **THE OFFICIAL COMMITTEE OF** | ) | |
| **ADMINISTRATIVE CLAIMANTS,** | ) | |
| **on behalf of LTV STEEL** | ) | |
| **COMPANY, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 11 C 3300** |
| | ) | |
| **GLENN J. MORAN,** | ) | **Magistrate Judge Morton Denlow** |
| **JAMES BASKE,** | ) | |
| **GEORGE HENNING, and** | ) | |
| **ERIC EVANS,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

This case comes before the Court on Defendants' motion to compel compliance with a subpoena relating to litigation in the Northern District of Ohio. The motion relates to Defendants' subpoena of Shefsky & Froelich Ltd. ("Respondent"), a Chicago law firm. Respondent claims that an attorney-client privilege applies to a number of the subpoenaed documents, while Defendants argue that the privilege ended when Respondent's corporate client went out of business. For the reasons explained below, the Court concludes that Hunter Corporation retains it s attorney-client privilege and denies the motion to compel.

# I. BACKGROUND FACTS

This motion arises from a discovery dispute in a lawsuit arising out of the failed restructuring of LTV Steel Company, Inc. ("LTV"). LTV filed for Chapter 11 bankruptcy on December 30, 2000, but the restructuring attempt collapsed in the fall of 2001. After investigating why the restructuring effort failed, the Official Committee of Administrative Claimants ("ACC") filed a lawsuit in the Northern District of Ohio (the "Ohio action"). The ACC claims that Defendants, former directors and officers of LTV, breached their fiduciary duties during the restructuring effort by incurring administrative debts that they knew the company could not repay.

One member of the ACC is Hunter Corporation ("Hunter"), a construction company and LTV vendor headquartered in Indiana and incorporated in Delaware. Defendants allegedly forced Hunter out of business by inducing Hunter to perform work for which Defendants knew LTV could not pay. Specifically, Hunter performed repairs on an LTV facility in 2001 for which LTV never paid. Hunter ceased construction operations shortly thereafter. Hunter has since pursued its claim against LTV, most recently as a member of the ACC in the Ohio action. Chester Jones continues to act as Hunter's President. Hunter was dissolved on March 1, 2009 for failure to pay Delaware franchise taxes. On February 2, 2011, Hunter was officially reinstated as a Delaware Corporation in good standing, after Hunter Vice President and Director Jerry Oshinski filed for revival of the company's charter.

Defendants seek the production of documents by Respondent, which served as Hunter's counsel. Joel Sprayregen, a shareholder of Respondent, both represented Hunter

during LTV's bankruptcy and has served as the ACC's Rule 30(b)(6) witness in the Ohio action. In 2010, during the period that Hunter was dissolved, Defendants sought documents from Respondent relating to Hunter's relationship with LTV. In response to a subpoena issued December 30, 2010, Respondent withheld some documents on the grounds that they were protected by an attorney-client privilege between Hunter and Respondent.

Oral argument was held on July 20, 2011, concerning whether Respondent may assert any attorney-client privilege that existed between the firm and Hunter. The motion also raises issues about work product protection and the sufficiency of Respondent's privilege log, but the Court has deferred ruling on those matters.

## II. DISCUSSION

Attorney-client privilege survives the death of a client if the client is a natural person, but the weight of authority suggests otherwise if the client is a corporation. *See, e.g.*, *TAS Distrib. Co. v. Cummins Inc.*, No. 07-1141, 2009 WL 3255297, at *2 (C.D. Ill. Oct 7, 2009) (collecting cases). "Absent some compelling reason to the contrary, the attorney client privilege does not survive the death of the corporation." *Id.*; *see also City of Rialto v. U.S. Dep't of Defense*, 492 F. Supp. 2d 1193, 1200–01 (C.D. Cal. 2007) (holding that fully dissolved corporations may not assert the attorney-client privilege). The different treatment for individuals and corporations makes sense, because once the business of a corporation is completely wound up, the company no longer has legal interests to protect or a reputation to maintain. *Cf. Swidler & Berlin v. United States*, 524 U.S. 399, 407 (1998) (noting reasons that attorney-client privilege survives the death of an individual).

To determine whether a corporation has "died," courts should look to practical business realities rather than technical legal status. One business may continue on even though its corporate structure has changed, while another business may terminate in reality even though it maintains its legal corporate status. A completely defunct company should not be allowed to assert privilege, regardless of whether it has technically maintained its legal status. *See Lewis v. United States*, No. 02-2958, 2004 WL 3203121, at *4–5 (W.D. Tenn. Dec. 6, 2004) (concluding that the "attorney-client privilege cannot be applied to a defunct corporation" where the corporation "is bankrupt and has no assets, liabilities, directors, shareholders, or employees"). Because a corporation's management controls its privilege, the corporation must also retain current management capable of asserting the privilege. *Gilliland v. Geramita*, No. 2:05-1059, 2006 WL 2642525, at *3–4 (W.D. Pa. Sept. 14, 2006) (holding that companies without ongoing management could not assert privilege even though they had not been technically dissolved).

On the other hand, a company does not immediately "die" simply because it ceases its normal business operations. The Supreme Court recognized this point implicitly when it held that the bankruptcy trustee controls a bankrupt corporation's attorney-client privilege. *See Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 351–52 (1985). If the trustee controls the privilege, then the privilege must still exist. Similarly, a dissolved corporation should be permitted to assert its privilege during the windup process, "at least until all matters involving the company have been fully resolved and no further proceedings are contemplated." *Reilly v. Greenwald & Hoffman, LLP,* --- Cal. Rptr. 3d---, 2011 WL

-4-

1970557, at *4 (Cal. Ct. App. 2011). To hold otherwise would undercut the primary policy underlying the privilege: "to encourage 'full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice.'" *Swidler & Berlin*, 524 U.S. at 403 (citation omitted). If a corporation lost its privilege as soon as it ceased normal business operations, it would likely be deterred from communicating frankly with its attorneys during the windup process, because any disclosures made would no longer be protected.

Hunter Corporation has not yet "died." At oral argument, Defendants conceded that the Court should look to practical business realities in determining the status of Hunter's privilege. So Hunter did not lose its privilege simply by virtue of the temporary dissolution after it failed to pay franchise taxes. The question is whether the corporation was ever completely defunct. It was not, because ever since Hunter ceased normal construction operations, it has pursued its claim against LTV. Pursuing claims is a natural part of the windup process. When Hunter went out of business, the claim at issue became its primary asset, and Hunter is now "in the business" of attempting to realize on that asset. That Hunter now pursues the claim as a member of the ACC rather than as a named party makes no difference, especially given that Hunter has played an active role on the committee. In fact, Hunter's counsel testified on behalf of the ACC as a Rule 30(b)(6) witness.

Hunter also retains management capable of asserting the privilege, in contrast to cases where corporations without current management lost their privilege. *Cf. Gilliland*, 2006 WL 2642525, at *3–4; *Lewis*, 2004 WL 3203121, at *4. Shefsky represents that it has asserted

privilege on behalf of Chester Jones, Hunter's President.  Thus, Hunter retained and properly

asserted its attorney-client privilege.

### III.  CONCLUSION

**For the reasons set forth in this opinion, Defendants' motion to compel is denied,
without prejudice to Defendants seeking production of non-privileged documents.
Defendants and Respondent shall attempt to reach agreement over which documents
or portions of documents shall be produced.**


**SO ORDERED THIS 4th DAY OF AUGUST, 2011.**


_Morton  Denlow_

**MORTON DENLOW
UNITED STATES MAGISTRATE JUDGE**

**Copies sent to:**

Sharon Doherty Sirott
Squire Sanders & Dempsey LLP
Three First National Plaza
70 W. Madison
Suite 2015
Chicago, IL 60602

Counsel for Glenn Moran


James B. Niehaus
Gregory R. Farkas
Julie R. Fenstermaker
Frantz Ward LLP
2500 Key Tower, 127 Public Square
Cleveland, OH 44114

Counsel for James Baske, Eric Evans and
George Henning

Cary E. Donham
Shefsky & Froelich Ltd.
111 East Wacker Drive
Suite 2800
Chicago, IL 60601

Counsel for Respondent